UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANGELA REFF,                                           CIV. NO. 13-3415 (JNE/JSM)
SIMON REFF,

      Plaintiffs,                                      REPORT AND RECOMMENDATION

v.

THE BANK OF NEW YORK MELLON,
f/k/a THE BANK OF NEW YORK, as TRUSTEES
FOR THE CERTIFICATE HOLDERS OF CWABS, INC.,
ASSET-BACKED CERTIFICATES, SERIES 2007-BC1, et. al.

      This matter came before the undersigned on defendant Bank of New York
Mellon's Motion to Dismiss [Docket No. 4].  This matter has been referred to the
undersigned Magistrate Judge for a Report and Recommendation by the District Court
pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local Rule 72.1, and the Amended
Administrative Order issued by Chief Judge Michael Davis on December 11, 2013
[Docket No. 3].  Pursuant to this Court's Order of December 19, 2013 [Docket No. 12],
this matter was decided on the parties' written submissions.

      Plaintiffs seek to invalidate the foreclosure of the mortgage on their home.
Plaintiffs asserts three claims against defendant Bank of New York Mellon f/k/a The
Bank of New York as Trustee for the Certificateholders CWABS, Inc., Asset-Backed
Certificates, Series 2007-BC1, et. al. ("BONYM"): (1) quiet title to determine adverse
claims under Minn. Stat. §599.01; (2) declaratory judgment; and (3) slander of title.  For
the reasons below, the Court recommends that BONYM's[1] Motion to Dismiss be
granted and plaintiffs' claims be dismissed with prejudice.

---

[1]    In the caption of their Complaint, plaintiffs also purport to sue "all other persons
unknown claiming any right, title, estate, interest, or lien in the real estate described in

## I.     BACKGROUND

On or about September 18, 2013, plaintiffs sued BONYM in state court.  Notice of Removal, Ex. A (Summons and Complaint) [Docket No. 1-1].  BONYM removed the suit to Federal District Court on December 11, 2013, pursuant to 28 U.S.C. §1332(a). Notice of Removal [Docket No. 1].  The facts bearing on the motion to dismiss are as follows.   On September 18, 2006, plaintiffs entered into a Note and Mortgage ("Mortgage") with First National Bank of Arizona ("FNB") for property located in Minneapolis, Minnesota ("Property").     Complaint, ¶¶1, 4.     Mortgage Electronic Registration System ("MERS") was named as the nominee for FNB.  Id., ¶4.  Plaintiffs specifically denied that the named defendant or its predecessor-in-interest had the legal right to declare a default on the Note.  Id., ¶5.  The Complaint alleged that "plaintiffs did not borrow money from any named defendant."  Id.

FNB and BONYM's predecessors-in-interest securitized the mortgage loan into a mortgage-backed security trust entitled "Asset-Backed Certificates, Series 2007 BC-1 Trust ("2007 BC-1 Trust").  Id., ¶6.  The securitization process was governed by a Pooling and Service Agreement ("PSA").  Id.  The PSA required that the parties to the securitization documents create and deliver documents creating a complete chain of title, including executed assignments of mortgage and properly endorsed promissory notes to and from the following entities:  (1) from Countrywide Home Loans, Inc. to

---

the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court recommends that all claims against them be dismissed.  See Sonsalla v. Mortgage Elec. Registration Sys., Inc., Civ. No. 13-659 (JRT/JSM), 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

CWABS, Inc.; and (2) from CWABS, Inc. to Bank of New York as Trustee of the 2007-BC 1 Trust.  Id., ¶7.  The PSA required the Bank of New York to certify, as of the closing date of the trust, that it had received these documents.  Id., ¶7.  The closing date of the trust was February 28, 2007.  Id., ¶11.  The PSA provided that the rights of the parties to the PSA were governed by New York law, and that pursuant to Wells Fargo Bank, N.A. v. Erobobo, 972 N.Y.S.2d 147 (N.Y. Sup. Ct. 2013), if a trust asset is not actually transferred into a trust in accordance with the terms and timing indicated by the trust, then the trust's claim to that asset is void.  Id., ¶14.

On September 30, 2009, William Herrmann, as Vice President of BONYM, and Melissa J. Adelson, as Managing Director of BONYM, signed a Power of Attorney empowering BAC Home Loan Servicing LP f/k/a Countrywide Home Loans Servicing LP as BONYM's attorney-in-fact to foreclose on the Mortgage.  Id., ¶20, Ex. 7 (Power of Attorney).  The Power of Attorney was filed with the Hennepin County, Minnesota Registrar of Titles office on January 5, 2010.  Id.  The Power of Attorney did not provide a legal description of the real estate and did not identify the PSA to which it allegedly applied.  Id.

On August 13, 2010, Jeanette Grodsky signed a Limited Power of Attorney as "[Senior Vice President] of BAC Home Loans Servicing LP."  Id., ¶21, Ex. 8 (Limited Power of Attorney).  This Limited Power of Attorney empowered the Wilford, Geske & Cook law firm to foreclose the Property on behalf of BONYM.  Id.  The Limited Power of Attorney was filed with the Hennepin County Registrar of Titles office on April 4, 2011. Id.

On September 21, 2011, Alice Rowe, as Assistant Secretary of MERS, signed an Assignment of Mortgage assigning the Mortgage from MERS to BONYM.  Id., ¶22, Ex. 9.  When she signed the Assignment, Rowe was employed by Bank of America.  Id. The Assignment was filed in the Hennepin County Registrar of Titles office on September 29, 2011.  Id., Ex. 9.

On August 20, 2012, Eric Cook, a partner at Wilford, Geske & Cook signed a Notice of Pendency & Power of Attorney to Foreclose as "Vice President of Wilford, Geske & Cook, P.A., attorney-in-fact for Bank of America, successor by merger to BAC Home Loans Servicing, L f/k/a Countrywide Home Loans Servicing, LP, attorney-in-fact for the Bank of New York Mellon," authorizing Wilford, Geske & Cook to foreclose on the mortgage on behalf of BONYM.  Id., ¶23.  This Notice of Pendency & Power of Attorney was filed with the Hennepin County Registrar of Titles office on August 21, 2012.  Id., Ex. 10.

A sheriff's sale of the Property was conducted on January 4, 2013.  Id., ¶24. Wilford, Geske & Cook appeared at the sale on BONYM's behalf and bid the amount allegedly due on the note, $252,714.89.  Id.; Ex. 11 (Sheriff's Certificate of Sale and Foreclosure Record).  Plaintiffs specifically denied that BONYM had the right to exercise the power of sale in the mortgage or that it held the note on the date of the sheriff's sale. Id.

Plaintiffs alleged the foreclosure was void because the Assignment of Mortgage from MERS to BONYM violated the terms of the securitization documents and New York law, "which required execution and delivery of all assignments of mortgage prior to February 28, 2007."  Id., ¶32.  Alternatively, if the terms of the PSA were followed, the

foreclosure was void because the PSA required that BONYM certify receipt of assignments of mortgage, and those assignments were not recorded before the foreclosure. Id., ¶33.

Plaintiffs also alleged that the foreclosure was void for the following additional reasons: (1) the September 30, 2009, Power of Attorney was "patently void" due to lack of specificity and lack of recorded evidence of BONYM's rights in the Property as of that date; (2) because the September 30, 2009, Power of Attorney was void, BOA had no legal right to sign the Notice of Pendency & Power of Attorney dated August 20, 2012, and as a result, the Sheriff's Certificate of Sale and foreclosure sale were void. Id., ¶34.

Plaintiffs pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq. This Count alleged that in a quiet title action, defendant has the burden of proof, and consequently, defendant must prove its interest in the Property by a preponderance of evidence. Id., ¶¶36-45.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.02 that "[BONYM's ] interest in the Property and/or Mortgage is void," the foreclosure is void, and that plaintiffs remained the fee owner of the Property. Id., ¶¶47, 48.

Count III alleged slander of title based on defendant's drafting and recording of documents[2] that plaintiff claimed were false and not executed by legally authorized persons, which evidenced a reckless disregard for the truth and created a cloud on plaintiffs' title to the Property. Id., ¶¶50-52.

---

[2]    The Complaint does not identify these documents, but the Court assumed plaintiffs were referring to the Power of Attorney signed by Herrmann and Adelson, the Limited Power of Attorney signed by Grodsky, the Assignment of Mortgage signed by Rowe, and the Notice of Pendency & Power of Attorney signed by Cook.

As relief, plaintiffs sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Mortgage, Sheriff's Certificate of Sale, Assignment of Mortgage, and Notice of Pendency & Power of Attorney were void; and an order that plaintiffs are the fee owners of the Property. Complaint, Prayer for Relief, ¶¶I, II.

BONYM moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's Memorandum of Law in Support of Motion ("Def's. Mem."), pp. 4-23 [Docket No. 6]. As to plaintiffs' quiet title claim, BONYM contended that plaintiffs were simply wrong that all they needed to assert is that they were in possession of the Property and BONYM claimed an adverse interest. Id., pp. 5-8. According to BONYM, this characterization of the pleading requirements and burden of proof applicable to a quiet title claim is "contrary to established precedent." Id., p. 5 (citing cases). In addition, plaintiffs' theory that there are unrecorded assignments of the Mortgage was purely speculative and unrecorded assignments cannot be inferred based on an allegation that the Mortgage was securitized. Id., p. 10. BONYM argued that the evidence showed an unbroken chain of title from MERS to BONYM, the foreclosing entity. Id., pp. 10-11.

BONYM also rejected plaintiffs' challenge to the foreclosure-related documents. Id., pp. 12-13. As to the Assignment, BONYM argued that merely because Rowe was employed by an entity other than MERS when she signed the Assignment did not show that she lacked authority from MERS. Id., p. 12. BONYM also contended that plaintiffs lacked standing to challenge the assignment from MERS to BONYM because they were not parties to the Assignment. Id., pp. 13-14.

Additionally, BONYM maintained that plaintiffs' reliance on the PSA to invalidate the foreclosure should be rejected, arguing that plaintiffs could not invoke the PSA or New York trust law to void the foreclosure, as plaintiffs lacked standing to invoke the PSA, and at any rate, with regard to MERS loans, the PSA did not require the assignments that plaintiffs alleged were not recorded.  Id., pp. 14-16.

BONYM characterized plaintiffs' argument that the foreclosure was void because BONYM was not the note holder as a "repackaging of the discredited 'show-me-the-note'[3] arguments uniformly rejected by multiple courts as contrary to law."  Id., p. 16.

BONYM also argued that the quiet title claim was barred by the doctrine of unclean hands because plaintiffs defaulted on their mortgage.  Id., p. 17.

Finally, BONYM asserted that plaintiffs' challenge to the foreclosure was untimely, as they failed to raise their challenge within the six-month statutory redemption period and therefore, they lacked standing to challenge the foreclosure sale. Id., p. 18.

Regarding plaintiffs' claim for declaratory judgment, BONYM contended that the claim failed because it was based on plaintiffs' fatally flawed theories about the foreclosure and, at any rate, declaratory judgment is a remedy, not a cause of action. Id., pp. 19-20.   Because this count did not state any independent claim and the

---

[3]    This theory has been propounded by plaintiffs' former counsel, William Butler. Butler was suspended from practice before the United States Court of Appeals for the Eighth Circuit on December 26, 2013.  In re Butler, No. 13–9013 (8th Cir. Dec. 26, 2013).  As a result, Butler was automatically suspended from practice before the District Court, effective December 26, 2013. See D. Minn. L.R. 83.6(b)(1); In re Butler, Misc. No. 13–49(MJD), ECF No. 10 (D. Minn. Jan. 14, 2014).   Plaintiffs are currently unrepresented by counsel.

underlying claims on which it was based fail, the declaratory judgment claim also should be dismissed. Id., p. 20.

BONYM sought dismissal of plaintiffs' slander of title claim on the ground that plaintiffs' assertion that the defendant slandered title to the Property by drafting and recording false and invalid documents not signed by authorized persons was unsupported by any facts, and plaintiffs failed to plead malice, a necessary element of slander of title. Id., pp. 22-23.

## II.   LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

Id. (quoting Twombly, 550 U.S. at 555).   Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Id. (quoting Twombly, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

For the reasons set forth below, the Court concludes that plaintiffs failed to state a claim for relief and therefore, defendants' motion should be granted.

III.    **DISCUSSION**[4]

A.    <u>Quiet Title</u>

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

In response to defendants' motion to dismiss the quiet title claim,[5] plaintiffs contended that under Minnesota law they only had to plead that they possessed the Property and defendants had a claim adverse to them.[6]  Plaintiffs' Memorandum in

---

[4]    This Court notes that plaintiffs did not object to the foreclosure within the redemption period under Minn. Stat. § 580.23(a), and therefore, arguably no longer have standing to challenge the foreclosure, a point BONYM raised in its motion to dismiss.  Def. Mem., p. 18, Defendant's Reply Memorandum ("Def's Reply"), pp. 11-12 [Docket No. 14].  <u>See</u> <u>Sorem v. Bank of New York Mellon</u>, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, *3 (D. Minn. Aug. 29, 2013); <u>Cheng Lee v. Federal Nat. Mortg. Ass'n</u>, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, *3 (D. Minn., June 12, 2013); <u>Stein v. Chase Home Fin.</u>, Civ. No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *6 (D. Minn. Aug. 13, 2010) (holding that a plaintiff could not challenge the validity of a foreclosure because the challenge was raised after the expiration of the redemption period), <u>aff'd</u>, 662 F.3d 976 (8th Cir. 2011)).    However, given that the Minnesota Supreme Court held that a foreclosure was void for failure to strictly comply with Minn. Stat. § 580.02(3), despite the fact the suit was filed after the redemption period (albeit standing was not addressed in this decision), <u>Ruiz v. 1st Fidelity</u>, 929 N.W.2d 53, 58 (Minn. 2013), the Court proceeds to analyze the merits of plaintiffs' claims and will not address BONYM's argument regarding the timeliness of the lawsuit.

[5]    Butler was suspended from practice in this District as of December 26, 2013 and filed his Response in Opposition on January 9, 2014.  Therefore, his pleading is not properly before the Court.  <u>See</u> <u>Yang v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-2026 (D. Minn. Jan. 21, 2014) (Order adopting Report and Recommendation and noting that Butler filed objections to this Court's Report and Recommendation on January 10, 2014, after his suspension and at a time when "Butler cannot represent plaintiffs before this Court.").  Nonetheless, the Court has considered the merits of plaintiffs' arguments.

[6]    The Minnesota Court of Appeals has rejected plaintiffs' argument that a quiet title claim premised solely on allegations that they were in possession of the Property and defendant had a claim adverse to them states a cause of action under Minnesota law.

Opposition to Motion to Dismiss ("Pls' Opp. Mem."), pp. 9-12.   According to plaintiffs, once these elements are pled, the burden shifted to BONYM to prove the validity of its claim.  Id.  Additionally, plaintiffs maintained the Federal Rules of Civil Procedure do not alter the burden of proof of their state law quiet title claim.  Id., p. 9

Plaintiffs further contended that their quiet title claim was viable because BONYM failed to transfer the mortgage into the trust by the trust's closing date, and therefore, the trust's claim to the Mortgage was void under New York law.  Id., pp. 12-13.  Plaintiffs also asserted that BONYM lacked standing to commence the foreclosure because it did not have an interest in the Property.  Id., p. 14.

Plaintiffs' arguments fail for many reasons.

---

In a case similar to the instant suit and relying on the standards for pleading articulated in Twombly, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid.  Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss.  We disagree.
>
> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013), rev. denied (Mar. 18, 2014).

First, plaintiffs' argument that the Court should apply the Minnesota state court pleading standards to their quiet title claim is meritless.  Plaintiffs' former counsel Butler has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law."  Karnatcheva v. J.P. Morgan Chase Bank, N.A., 704 F.3d 545 548 (8th Cir. 2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortg. Ass'n., Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in Karnatcheva rejected the "burden of proof" argument in a quiet title action advocated by plaintiff.  704 F.3d at 548.  As the court explained in Gharwal:

> Karnatcheva rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.  Karnatcheva, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." Welk v GMAC Mortg., LLC, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).  Here, plaintiff's quiet title claims are based only on conclusory statements and speculation, but no facts.  The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, mere allegations of a plaintiff's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief.  See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'"); Witthuhn v. Nationstar Mortg., LLC, Civ. No. 13-680(JNE/AJB), 2013 WL 3166592,at *1 (D. Minn. June 20, 2013) ("According to [plaintiff], to state a quiet title claim, he need only allege his possession of real property and a defendant's claim of an adverse interest.  The Court rejects this claim.") (citations omitted).

The documents referenced in and attached to the Complaint show an unbroken chain of title documented through a recorded Assignment of Mortgage from MERS to BONYM f/k/a the Bank of New York as Trustee for the Certificateholders of CWABS

Inc., Asset-Backed Certificates, Series 2007-BC1.   Complaint, Exs. 9 (Assignment of Mortgage), 11 (Sheriff's Certificate of Sale and Foreclosure Record).   Thus, not only is there no factual support for plaintiffs' bald assertions regarding unrecorded assignments, the record shows the exact opposite—there were no unrecorded assignments of the Mortgage and the foreclosure was proper.

Third, plaintiffs' assertion that BONYM failed to deliver to the trust unrecorded assignments of mortgage is without merit.   This Court has previously noted that documents governing mortgage-backed trusts often do not require a chain of written mortgage assignments when, as here, MERS is named the nominee for the lender and is listed as the Mortgagee (Complaint, Ex. 1, Mortgage). See Wolff v. Bank of New York Mellon, --F. Supp.2d--, Civ. No. 13-2175 (PJS/JSM), 2014 WL 641510, at *12, n. 4 (D. Minn. Feb. 19, 2014) (citing Wollmering v. JPMorgan Chase Bank, N.A., No. A12–1926, 2013 WL 3779217, at *5 (Minn. Ct. App. July 22, 2013) ("Appellants argue that the Wollmering and Bakke/Fink mortgages were parts of trusts that required mortgage assignments according to the trust terms and that '[t]he trust documents are therefore evidence of the unrecorded assignments.' Section 2.01 of the PSAs does require that Structured Asset deposit with JPMorgan Chase the original mortgage. But under the express language of the PSAs, the requirement that Structured Asset deposit a certified copy of the assignment of the mortgage to JPMorgan Chase applies 'unless the Mortgage Loan is a MOM loan,' and a Mom Loan is defined as '[w]ith respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.'   Thus, Structured Asset was not required to deposit certified

copies of assignments of the Wollmering and Bakke/Fink mortgages, which named MERS as mortgagee as nominee for the originator and its successors, and the trust documents are not evidence of unrecorded assignments.")); Colton v. U.S. Nat. Bank Ass'n, Civ. No. 3:12-3584-D, 2013 WL 1934560, at *4 (N.D. Tex. May 10, 2013) ("[I]t is reasonable that the PSA would not require that a MERS-designated mortgage loan be assigned to U.S. Bank to evidence transfer of ownership to the Trust. The purpose of MERS is to avoid the task of preparing and recording separate assignments for each mortgage conveyance.") (citing MERS: The Mortgage Electronic Registration System, 63 Consumer Fin. L.Q. Rep. 262, 263 (2009)).

Fourth, even if the Assignment of Mortgage was required to be delivered to the trust, New York law does not void BONYM's interest in the Mortgage. The Complaint cited Erobobo, 972 N.Y.S.2d 147, at *8-9 (Complaint, ¶14), in which the court concluded that the transfer of an assignment of a mortgage into a trust in violation of the terms of the PSA—made 18 months after the trust had "closed" and had not been assigned in by the depositor—rendered the assignment void under New York law. However, the majority of courts to examine Erobobo have criticized the decision and held that under New York law, an assignment of a mortgage into a trust in violation of the terms of the PSA is voidable, and not void, as the action can be ratified by the beneficiaries. See, e.g., Butler v. Deutsche Bank Trust Co. Amer., 748 F.3d 28 (1st Cir. 2014) ("[T]he vast majority of courts to consider the issue have rejected Erobobo's reasoning, that despite the express terms of N.Y. Est. Powers & Trust Laws §7-2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable) (citations omitted); Felder v. Countrywide Home Loans, Civ. No. H–13–0282, 2013 WL 6805843, at *19

(S.D. Tex. Dec. 20, 2013) (quoting Green v. Bank of Amer. N.A., Civ. No. H–13–1092, 2013 WL 3937070, at *3 (S.D. Tex. July 30, 2013), citing Mooney v. Madden, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993)) ("'Courts applying New York law have treated actions by trustees as voidable.'"); Halacy v. Wells Fargo Bank, N.A., Civ. No. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013) (citing Koufos v. U.S. Bank N.A., 939 F. Supp.2d 40, 49 n. 5, 56 n. 2 (D. Mass. 2013) (criticizing Erobobo and finding that a "non-PSA-compliant" transaction is typically "voidable," rather than "void" under New York law)); Deutsche Bank Nat. Trust Co. v. Adolfo, Civ. No. 12-C-759, 2013 WL 4552407, at *3 (N.D. Ill. Aug. 28, 2013) ("we are persuaded by the courts that have held that a transfer that does not comply with a PSA is voidable, not void.") (citations omitted); Calderon v. Bank of America N.A., 941 F. Supp.2d 75, 7663 (W.D. Tex. 2013) (finding that New York Courts have held that a beneficiary can ratify a trustee's ultra vires, and if an act may be ratified, it is voidable rather than void) (citing Mooney v. Madden, 193 A.D.2d 933, 597 N.Y.S.2d 775 (1993); Matter of Estate of Janes, 165 Misc.2d 743, 630 N.Y.S.2d 472, 477 (Sur. 1995), aff'd as modified sub nom., Matter of Janes, 223 A.D.2d 20, 643 N.Y.S.2d 972 (1996), aff'd sub nom., Matter of Estate of Janes, 90 N.Y.2d 41, 659 N.Y.S.2d 165, 681 N.E.2d 332 (N.Y. 1997); Leasing Serv. Corp. v. Vita Italian Restaurant, 171 A.D.2d 926, 566 N.Y.S.2d 796, 797-98 (1991); Hine v. Huntington, 118 A.D. 585, 103 N.Y.S. 535, 540 (1907); 106 N.Y. Jur.2d Trusts § 431 ("[T]rustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's ultra vires act or agreement.")) (citations omitted).

Fifth, plaintiffs' conclusory claim that "documents" were "not executed by legally authorized persons," (Complaint, ¶50), "do[es] not hold up to even the slightest scrutiny." Simmer v. HSBC Bank, Civ. No. 13-1549 (DSD/AJB) 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiff's allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531(SRN/JJK), 2013 WL 3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn. May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations.").

Sixth, even if the PSA applied to plaintiffs' mortgage or there was any truth to plaintiffs' speculative statements about the lack of signing authority of Hermann and Adelson (as to the September 30, 2009 Power of Attorney), Grodsky (as to the August 13, 2010 Limited Power of Attorney), Rowe (as to the September 21, 2011 Assignment

of Mortgage), Cook (as to the October 12, 2012 Notice of Pendency), or Cook (as to the August 20, 2012 Notice of Pendency & Power of Attorney to Foreclose), plaintiffs suffered no injury in fact as a result and, therefore lack standing to pursue a quiet title claim on this basis.  See Novak, 2012 WL 3638513, at *6, aff'd, 518 F. App'x 498 (8th Cir. 2013) (dismissing plaintiff's complaint with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); Karnatcheva, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities.  But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); Wolff, 2014 WL 641510, at *1 ("The Eighth Circuit has held that parties in plaintiffs' position do not have standing to raise this type of argument."); Sorem, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the Assignment of Mortgage, the Court rejects this argument

because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); Forseth v. Bank of Am., N.A., Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue   claims.") (citations omitted); Kaylor v. Bank of Am., N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Stinson v. U.S. Bank, N.A., Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); Greene v. Home Loan Servs., Inc., Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010)

("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

For the same reasons, plaintiffs' allegation that the Power of Attorney signed by Herrmann and Adelson on September 30, 2009, was defective because it did not describe the Property or the PSA, fails.  Even assuming that there was a defect in the Power of Attorney, plaintiffs suffered no injury in fact as a result and, therefore, lack standing to assert a claim based on this alleged defect.  Additionally, as there is no evidence that this Power of Attorney relates in any way to the Property, it is irrelevant to the foreclosure proceeding.  The Power of Attorney relevant to the foreclosure was signed on August 20, 2012 and recorded on August 21, 2012.  Complaint, Ex. 10 (Notice of Pendency & Power of Attorney).

Seventh, plaintiffs' standing argument is meritless.  To the extent plaintiffs relied on Nelson v. Johnson, 209 N.W. 320 (Minn. 1926), (Pls.' Opp. Mem. 14), that case is irrelevant as it involved an eviction proceeding.  This is not an eviction proceeding. More importantly, as the legal mortgagee of record, BONYM had standing to foreclose. See Stein, 662 F.3d at 980 ("[T]he right to enforce the mortgage remains with the legal holder of the mortgage.").

Lastly, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands.  Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12–565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012),

aff'd, 720 F.3d 979 (8th Cir. 2013); see also Yang Mee Thao–Xiong, 2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage prevented her from seeking equitable relief); Stilp v. HSBC Bank USA, NA, Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013) ("Plaintiffs defaulted on their mortgage loan over four years ago. They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).   Plaintiffs, having defaulted on their mortgage, come to court with unclean hands and are precluded from pursuing a quiet title claim.  Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn.1937) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim).   Plaintiffs defaulted on their mortgage payments and, therefore, come to court with unclean hands.

For all of these reasons, plaintiffs' quiet title claim fails and should be dismissed.

## B.   Slander of Title

To state a claim for slander of title, plaintiffs must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).   To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [ ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co.,

742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920). Additionally, plaintiffs must establish that they relied on the alleged false statement. See Welk, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiffs alleged no facts from which this Court could infer that BONYM made a false statement, acted maliciously, or that plaintiffs suffered any pecuniary loss from a publication concerning title to their property. See Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *4 (D. Minn. Aug. 9, 2013) (dismissing similarly-pled slander of title claim). Therefore, plaintiffs failed to state a claim for slander of title, and dismissal is required.[7]

---

[7]    The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094(SRN/JJG), 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013). BONYM did not argue in favor of dismissal based on plaintiffs' failure to meet this standard. Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

### C.   Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "they are left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).  Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiffs' suit be dismissed with prejudice.[8]

---

[8]     "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  Such is the case here.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is

IV.   **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.      Defendant's Motion to Dismiss [Docket No. 4] be **GRANTED.**

2.      This matter be dismissed with prejudice.


Dated:  July 24, 2014                    *Janie S. Mayeron*
                                          JANIE S. MAYERON
                                          United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 14, 2014,** a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).